UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Barbara J. Stringer

    v.                                  Civil No. 16-cv-150-JD
                                                      Opinion No. 2018 DNH 092

Home Depot U.S.A., Inc.[1]


O R D E R

    Barbara J. Stringer, who is now proceeding pro se, brought claims against her former employer, Home Depot, arising from the treatment she received during her employment and the circumstances of her termination.  Home Depot moves for summary judgment on the ground that Stringer cannot prove her claims.  Stringer objects to summary judgment.

Standard of Review

    The purpose of summary judgment is to determine whether a trial is necessary.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material

---

    [1] Although Barbara Stringer identifies Home Depot in the complaint as two entities, one with an address in Londonderry, New Hampshire, and one with an address in Atlanta, Georgia, the correct name is Home Depot U.S.A., Inc.

fact and the movant is entitled to judgment as a matter of law."[2] Fed. R. Civ. P. 56(a). "A genuine issue of material fact only exists if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Town of Westport v. Monsanto Co., 877 F.3d 58, 64-65 (1st Cir. 2017) (internal quotation marks omitted); Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015).

"On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the moving party provides evidence to show that the nonmoving party cannot prove a claim, the burden shifts to the nonmoving party to show that there is at least a genuine and material factual dispute that precludes summary judgment. Woodward v. Emulex Corp., 714 F.3d 632, 637 (1st Cir. 2013).

---

[2] In her objection to Home Depot's motion for summary judgment, Stringer relies on New Hampshire law for the standard of review. Federal courts, however, apply the Federal Rules of Civil Procedure, even in cases involving state substantive law. See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 438 (1974).

In this district, "[a] memorandum in support of a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." LR 56.1(a). "A memorandum in opposition to a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial." LR 56.1(b). Importantly, "[a]ll properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party." Id.

In the conclusion section of her objection, Stringer asks the court to grant "summary or default judgment" in her favor.[3] "Objections to pending motions and affirmative motions for relief shall not be combined in one filing." LR 7.1(a)(1). Therefore, to the extent Stringer intended to move for summary judgment in her objection, that request cannot be considered.

---

[3] In support, Stringer refers to her motion for sanctions, which the magistrate judge denied on December 21, 2017. Doc. no. 49. The magistrate also denied Stringer's motion for reconsideration. Doc. no. 55.

<u>Background</u>

A. <u>Employment Background</u>

Home Depot hired Stringer as a cashier in 1993.  She was promoted to the position of assistant store manager ("ASM") in 2000.  At the end of 2008, she was transferred to the Home Depot store in Londonderry, New Hampshire, as an ASM.

In December of 2009, Stringer became an operations ASM. An operations ASM is responsible for increasing sales and store profitability, along with managing expenses, lessening "shrink", insuring good customer service, keeping merchandise in stock, and maintaining the store's appearance.  In addition to storewide responsibilities, an operations ASM has direct responsibility for the cashiers, the receiving and freight areas, and the service desk.  An operations ASM also addresses customer service issues, opens and closes the store, and acts as the Manager on Duty when scheduled to do so.

Peter Tavano became store manager at the Londonderry Home Depot in August of 2011.  Tavano had worked for Home Depot since 1992.  Tavano noticed that Stringer had deficiencies in basic skills for an ASM that he thought she would have mastered after eleven years in that position.  Stringer believes that her job performance was good because she went to work and did what she was supposed to do.

Specifically, Tavano found that Stringer was not able to communicate her expectations and work lists to the department heads who were under her supervision and was not disciplining or holding accountable employees who did not fulfill their responsibilities. Tavano states in his declaration that from the time he arrived in 2011 to March of 2012 he had numerous verbal discussions with Stringer about her performance. He focused on her communications issues and her unwillingness to discipline associates for policy and process violations.

On March 19, 2012, Tavano gave Stringer a Performance Discipline Notice ("PDN") because she authorized a markdown in the price of generators that caused a loss of $4,200. She signed the PDN the same day, acknowledging that she had received it. Three days later, on March 21, Tavano gave Stringer her annual Performance and Development Summary for 2011, rating her as a "Valued Associate" and "Well-Positioned" and conducted a review meeting with her.

Heather Houle, the district manager, and Frances Cianci, the district human resources manager, also attended the review meeting with Stringer. Tavano reviewed his concerns about her performance: that she did not adequately hold accountable the people who reported to her, that she was not proactive and lacked a sense of urgency, and that she should manage processes before

being asked to do so.[4]  Tavano identified three areas for development:  broadening her understanding of the business beyond her own function, developing the people who reported to her to get work done, and improving the quality of her decisions instead of using quick solutions or conclusions before analysis.

Tavano also noted that Stringer had only an average understanding of operational control of the store with respect to profit and loss.  Home Depot issues a monthly profit and loss statement that ASMs have access to for review.  The profit and loss statement shows the profitability of the particular store, what is improving revenue, and what is hindering revenue.  Tavano believed that an effective ASM would review the profit and loss statement at least weekly.  He directed Stringer to study the annual profit and loss report, to spend time with the people who report to her for an in depth career discussion, to spend time with her "DOM", and to provide a follow-up report by the end of the first quarter.  She did not submit a follow-up report to Tavano.

After the performance review, Stringer met with Houle and Cianci and complained that Tavano was being tough on her.  She

---

[4] Some of the same issues had been cited in Stringer's prior performance reviews.

did not complain that she was treated differently from other employees or that Tavano's toughness was because she was female.

When Houle asked Stringer about her goals, she said that she hoped to be a store manager in five years.  Houle told her that she would have to demonstrate adequate performance as an operations ASM before she would be considered for promotion. Houle also said that Tavano had given her feedback and that Stringer had many things to work on to show that she could meet Home Depot's standards.

Houle was not surprised that Stringer's performance was substandard because Houle had previously worked with her.  During that time, Houle found that Stringer did the least amount of work necessary, that she did not comply with suggestions for improvement, and that she never invested time in improving her own performance or the performance of employees whom she supervised.

On August 29, 2012, Tavano issued another PDN to Stringer for poor job performance.  Tavano noted problems with the cashiers under her supervision and that Stringer had no plan to deal with the problems.  Tavano told her that she had two weeks to develop a plan for herself and for her team in order to monitor and change behavior and that any further violations of the "Standards of Performance" would result in additional

disciplinary action or termination.  She signed the PDN on August 29, 2012.

Stringer had her mid-year review with Tavano and Heather Houle on September 4, 2012.  Tavano noted that Stringer had made no progress since her March performance review.  Tavano met with her again in November of 2012 to discuss her performance and to follow up on her midyear review.  Tavano reported the meeting to Cianci in an email, saying that he continued to try to coach Stringer on communication, leadership, and accountability. Tavano was frustrated by Stringer's need for guidance on the profit and loss information because he thought she should have known that area.

At the same time, Tavano promoted a female employee, Renee Hough, to the position of ASM.  Stringer believed that Tavano favored Hough over her and noted that Tavano treated Hough with respect.

On November 30, 2012, Stringer was part of a "District Business Walk" ("Walk") when Heather Houle visited the store and conducted an organized tour with the store manager and some ASMs to discuss certain issues.[5]  The Walk had been scheduled for two

---

[5] Home Depot managers and supervisors did "walks" through the stores with personnel as a management tool to identify strengths and areas that needed improvement.

months, and the ASMs were notified about what to expect and what topics would be covered.

Stringer stated in her EEOC charge that Houle assigned her to the cabinetry area and that Tavano remarked to another ASM with a laugh: "How do you think she'll do?" When Houle asked Stringer about the store's profit and loss, she had no answers although it was her responsibility to have that information. Houle conducted a review after the Walk, identifying numerous issues in Stringer's assigned area.

After the Walk, Stringer approached Houle and asked what operational issues were identified during the Walk. Houle responded that both she and Tavano had had discussions with her about her performance and that based on those discussions Stringer knew what she needed to do to improve to an acceptable performance level.

On December 5, 2012, Stringer received a third PDN, which was a final warning about her performance. Tavano noted that during the Walk several issues concerning Stringer's performance had been raised, some of which were repeat issues that had not been addressed by her. Tavano said that she had to present an action plan that was sustainable and measurable. Stringer signed the PDN that day.

After receiving the PDN and final warning, Stringer met with Fran Cianci, the district manager for human resources. Stringer expressed her dissatisfaction with the PDN and the Walk and blamed Tavano for her poor performance. She claimed that Tavano was not giving her information that she needed and was being unfair. Cianci told Stringer that she had access to the profit and loss reports and that it was her responsibility to read the reports.

Stringer did not raise any issue of discrimination or discriminatory treatment during her meetings with Houle and Cianci. Houle and Cianci did not tell Tavano about Stringer's complaints about him.

Tavano met with Stringer again on December 12, 2012, to discuss performance issues. Tavano noted that the action plan Stringer prepared was not specific or sustainable. On December 27, Tavano shopped in the store while he was on vacation and noticed a cashier sending text messages while she was working. Tavano told Stringer to document the incident and coach the cashiers. By January 21, 2013, Stringer had not provided any coaching to the cashiers to address the texting issue.

Also in January, Tavano made a note that Stringer was unable to report on the performance of any of her cashiers. She had been told repeatedly that she was responsible for the

accountability and execution of her associates.  Tavano noted
that Stringer's failure to have that information, particularly at
performance review time, was totally unacceptable.

On January 9, 2013, Tavano led an "Asset Protection Walk"
through the store with Stringer and others.  During the Walk,
Tavano discussed asset protection issues with Stringer.  Tavano
overheard another ASM ask Stringer why she had left confidential
documents open and accessible to all of the associates.

An issue with customer service arose at the end of January
of 2013.  A customer filed a complaint with the corporate office
about delay in servicing his generator.  Store records showed
that the customer called on December 13, and Stringer was told
that the customer was upset about the delayed repair.  Stringer
did not enter notes about the status of the repair or her
communications about the incident.  When Tavano asked Stringer
about the repair issue, she said that she called about the repair
and was told it was in process.  That was all she knew about it.
Tavano found that the incident demonstrated Stringer's lack of
urgency and managerial responsibility and, because she was on a
final warning, decided to recommend that her employment be
terminated.

Tavano contacted Home Depot's Associate Advice and Counsel
Group, comprised of human resource professionals at the Home

Depot headquarters in Atlanta who resolve associate concerns and answer questions about company policy and procedures. Tavano gave the Group his recommendation for termination along with all of the performance information about Stringer for review. The Group reviewed the records and concurred with Tavano's recommendation that Stringer should be terminated.

As is required when employment termination is recommended, Cianci as the district human resources manager, prepared an investigation review summary, which was given to Houle and Lisa Chiras, Regional Human Resources Director. The investigation review summary form includes a section for "Additional Concerns or Considerations" where Cianci listed: "Female over 40, African American  Has brought to the SM's attention the potential of a medical condition (no supporting detail at this time)." The summary also listed Stringer's disciplinary incidents and described the performance review on December 5 and the customer service issue in January. Houle, Cianci, and Michael Hicks from the Group all agreed with Tavano's recommendation to terminate Stringer's employment.

On February 19, 2013, Tavano told Stringer that her employment was terminated. In March of 2013, Tavano hired Reydel Veenstra, who is female, to replace Stringer.

B.  <u>Procedural Background</u>

Stringer filed a charge of discrimination with the New Hampshire Commission for Human Rights on April 3, 2013 (the "EEOC charge").[6]  Stringer, who was then represented by counsel, filed a complaint against Home Depot in state court on February 16, 2016.  In Count I, she alleges that Tavano terminated her employment because of her sex, but she does not cite a legal theory to support Count I.[7]  In Count II, she alleges that Home Depot retaliated against her by terminating her employment when she complained of discriminatory treatment, and provides no legal basis for that claim.  In Count III, she alleges wrongful termination, a state law claim.

Home Depot removed the case to this court on April 15, 2016. Stringer's counsel filed a notice of withdrawal on May 10, 2016, and Stringer filed a notice of pro se appearance on May 25.

Discovery issues arose in the case, which were addressed by the magistrate judge.  In response to a motion by Home Depot, the magistrate set a date for Stringer to depose Home Depot's

---

[6] Stringer alleges in the complaint that the New Hampshire Commission for Human Rights issued a "For Cause finding" on July 13, 2015.

[7] In the jurisdiction section of her complaint, Stringer cites RSA chapter 354-A as the jurisdictional basis for Counts I and II.

witness designated under Federal Rule of Civil Procedure
30(b)(6).

After the Rule 30(b)(6) deposition, Stringer filed a motion
for sanctions against Home Depot, arguing that Home Depot had not
provided a Rule 30(b)(6) witness who was prepared to testify on
the topics sent in Stringer's notice.  As a sanction for the
alleged violations, Stringer sought default judgment against Home
Depot and asked the court to set a trial date for assessing
damages.  The magistrate judge denied the motion for sanctions on
December 21, 2017, doc. no. 49, and denied her motion for
reconsideration, doc. 55.

On October 30, 2016, Home Depot moved for summary judgment
on all claims.  Stringer filed an objection; Home Depot filed a
reply, and Stringer filed a surreply.  In her responses to the
motion for summary judgment, Stringer noted that she had moved
for the sanction of default judgment and asked the court to grant
her summary judgment or default judgment, based on her then-
pending motion for sanctions.  She also mentioned the EEOC
charge, without developed argument.  Stringer did not address the
substance of her claims or provide a factual statement to support
her objection.

The court scheduled a hearing on the motion for summary
judgment to clarify Stringer's claims and theories.  Although

Home Depot had identified many deficiencies in Stringer's allegations in the complaint and her objection to summary judgment, Stringer had not responded to the matters raised. Before the hearing, the court issued a procedural order to notify the parties that the hearing was for argument only and was being held to address specific matters set forth in the order.

In the procedural order, the court outlined Stringer's claims and noted that she had not provided legal theories to support her claims in response to the motion for summary judgment. The court stated: "Stringer shall be prepared at the hearing to articulate her theory or theories in support of her discrimination claim in Count I and the legal basis or bases for her claim, including whether she intends to pursue a claim for hostile work environment." The court noted that in her objection to summary judgment, Stringer did not address her retaliation claim and instructed her to be prepared to inform the court and opposing counsel why the claim should not be dismissed. The court also noted that Stringer had not responded to Home Depot's argument that her wrongful termination claim should be dismissed both on the merits and because it was preempted, and instructed her to be prepared to inform the court and opposing counsel why the claim should not be dismissed. The court also directed the

parties to be prepared to address Stringer's EEOC charge and the investigation review summary prepared by Frances Cianci.

The hearing was held on April 26, 2018. Stringer agreed with the court that she intended to bring her claims in Count I and Count II under both state and federal law. When asked, Stringer stated that she intended to pursue a hostile work environment claim in Count I, in addition to termination based on her sex. With respect to her retaliation claim, Count II, Stringer stated: "It should not be dismissed due to the disparate treatment I received from Peter Tavano."

The court stated that Stringer also had not objected to summary judgment on her wrongful termination claim, Count III, and noted that she had not raised any public policy issue to support the claim. In response, Stringer stated: "Your Honor, even though I acted in a manner consistent in going through the protocols and informing the higher-ups in regards to the treatment, the disparate treatment that I was receiving from this particular individual, I did everything to remedy the situation and I feel that I was retaliated against because of it."

The parties addressed the statement in the investigation review summary, prepared by Frances Cianci, that identified Stringer as female, over forty, and African American. Stringer stated that the cited part of the summary "clearly

declares that my race, sex and age were in fact factors in my termination."[8]  She also stated that "the document equivocally [sic] revealed that Home Depot treated my termination differently than other terminations."

Counsel for Home Depot explained that the investigation review summary is a document used when terminating a management position.  The summary is provided to managers at Home Depot who do not know the employee who is recommended for termination.  For that reason, the summary included protected characteristics to insure that the termination decision was consistent with decisions being made "across the board."

The parties also addressed the EEOC charge.  Stringer reiterated some of the statements in the charge.  Counsel for Home Depot objected to reliance on the charge because it was based on hearsay and was contradicted by Stringer's deposition testimony.

C.  EEOC Charge

Stringer did not provide an affidavit or a declaration in support of her objection to summary judgment, but she did refer to her EEOC charge.  Stringer signed the EEOC charge under penalty of perjury that her statements were true and correct,

_____

[8] Stringer brings claims for sex discrimination only.  There are no claims for age or race discrimination.

making the charge the equivalent of a declaration.  See 28 U.S.C.
§ 1746; Foy v. Pat Donalson Agency, 946 F. Supp. 2d 1250, 1255
(N.D. Ala. 2013).

To be competent to oppose summary judgment, however, a
declaration "must be made on personal knowledge, set out facts
that would be admissible in evidence, and show that the affiant
or declarant is competent to testify on the matters stated."
Fed. R. Civ. P. 56(c)(4); see also Fed. R. Evid. 602.  "[T]o the
extent that affidavits submitted in opposition to a motion for
summary judgment merely reiterate allegations made in the
complaint, without providing specific factual information made on
the basis of personal knowledge, they are insufficient."  Garmon
v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 315 (1st Cir. 2016)
(internal quotation marks omitted).

For some statements in the EEOC charge, Stringer does not
show or explain that she has personal knowledge of the matter
asserted or that she would be competent to so testify at trial.
She states in the charge that a male assistant manager left the
store unlocked and was not disciplined.  At the hearing, Stringer
explained that she knew the store was left unlocked on a Saturday
night because she opened the store on Sunday morning.  She did
not explain, however, how she knew that the male assistant
manager was not disciplined.  Similarly, she states that a male

assistant manager got into a yelling match with another employee but was not disciplined.  She provides no information to show that she has personal knowledge of that incident.  She states that she was disciplined for "zero corn" issues while male managers were not disciplined, but she again provides no basis for personal knowledge about who was disciplined.

General allegations without facts to show Stringer had personal knowledge of those matters and their materiality to her claims do not provide competent support to oppose summary judgment.  For that reason, the unsupported statements are not considered here for purposes of showing the material facts in the case.

Stringer also states in the EEOC charges that "Tavano was supposed to perform a Development Review at mid-year, based upon the Yearly Review.  He never did mine, although he did perform such a review for all the male assistant managers."  At her subsequent deposition, however, Stringer admitted that Tavano did do the required reviews with her.  Further, the declarations submitted by Tavano and Houle document that contrary to Stringer's statement in the EEOC charge, Stringer received performance reviews and direction about her performance.

<u>Discussion</u>

Home Depot seeks summary judgment on all three of Stringer's claims, on the grounds that she cannot show that her termination was motivated by sex discrimination, that she lacks the necessary proof to show retaliation, and that her wrongful termination claim is preempted by RSA 354-A.  Stringer objects to summary judgment, arguing that Home Depot did not have a non-discrimination policy or follow its policy in her case, that she has direct evidence of sex discrimination, that she also can make a prima facie case of sex discrimination, and that her termination was not based on her performance.[9]

I.  <u>Dispute about Home Depot's Policy</u>

In her objection, Stringer disputes Home Depot's "core policy," and contends that Tavano did not follow Home Depot's policy.  Stringer's dispute appears to be aimed at Home Depot's statements in the fact section of the motion for summary judgment that Home Depot maintains a "Harassment and Non-Discrimination Policy."  She does not explain, however, why her challenge to Home Depot's statements about its policy and whether Tavano

---

[9] To the extent Stringer also relies on her motion for sanctions against Home Depot, which was denied by the magistrate judge on December 21, 2017, that matter is not considered here. The grounds for the motion for sanctions, which pertained to the Rule 30(b)(6) witness, have no relevance to Stringer's claims or her opposition to summary judgment.

followed the policy is material to her claims or to summary judgment.[10]  As such, any dispute about Home Depot's policy does not affect the issues presented for summary judgment.

## II.   Count I – Sex Discrimination

Because the New Hampshire Supreme Court relies on cases construing claims under Title VII to analyze claims under RSA 354-A, Stringer's discrimination claim in Count I may be addressed simultaneously under Title VII and RSA 354-A.  See Salisbury v. Home Depot, U.S.A., Inc., 2014 WL 6750648, at *2, n.4 (D.N.H. Dec. 1, 2014) (citing Madeja v. MPB Corp., 149 N.H. 371, 378 (2003)); Hubbard v. Tyco Integrated Cable Sys., Inc., 985 F. Supp. 2d 207, 218 (D.N.H. 2013).  At the hearing, Stringer stated that she intended to bring sex discrimination claims based on her termination and a hostile work environment.

### A.  Termination

"Title VII of the Civil Rights Act of 1964 forbids a covered employer from 'discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions or privileges of employment because of such individual's . . . sex.'"  Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016) (quoting

---

[10] Stringer does not bring a due process claim, nor could she because this case does not involve a public employer.  Cf. Jones v. City of Boston, 752 F.3d 38, 55-56 (1st Cir. 2014).

§ 2000e-2(a)(1)). "A Title VII sex discrimination case may be proven with direct evidence of discrimination, such as an admission by the employer that it explicitly took [a sex related issue] into account in reaching an employment decision." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) (internal quotation marks omitted). Because direct evidence of discrimination is rare, sex discrimination may also be proven with circumstantial evidence. Id.

### 1.  Direct Evidence of Termination Based on Sex

Stringer contends that the investigation review summary prepared by Frances Cianci is direct evidence of sex discrimination because it identified Stringer as female. Stringer argues that Cianci's reference to her as a female recognizes her as a member of a protected class. Stringer interprets that recognition as stating the reason for her termination.

As was discussed during the hearing, the investigation review summary identified Stringer's protected characteristics to avoid an improper termination. Stringer provides no evidence to dispute Home Depot's stated purpose or to show that the reference to her as female was the reason for her termination. Her interpretation of the investigation review summary is incorrect. Therefore, Stringer has not shown direct evidence of

discrimination based on the protected characteristics listed in
the summary.

    2.  <u>Circumstantial Evidence of Termination Based on Sex</u>

When direct evidence is lacking, discrimination may be shown
with circumstantial evidence under the framework provided in
McDonnell Douglas Corp., 411 U.S. 792 (1973. Burns, 829 F.3d at
8.  Under the three-stage <u>McDonnell Douglas</u> burden-shifting
framework, a plaintiff first must provide sufficient evidence to
support a prima facie case of discrimination. Cherkaoui v. City
of Quincy, 877 F.3d 14, 24 (1st Cir. 2017).  If the plaintiff
meets the prima facie burden, a rebuttable presumption of
discrimination is created that the defendant may rebut "by
pointing to evidence of a legitimate, non-discriminatory reason
for the challenged conduct." <u>Id.</u> (internal quotation marks
omitted).  Evidence of a legitimate and non-discriminatory reason
for the defendant's actions ends the presumption of
discrimination, and the plaintiff must then "offer evidence that
defendant's explanation is pretextual and that discriminatory
animus prompted the adverse action." <u>Id.</u> (internal quotation
marks omitted).

    a.  <u>Prima Facie Case</u>

"To establish a prima facie case [the plaintiff] must show
by a preponderance of the evidence that:  (1) [she] is a member

of a protected class; (2) ([she] is qualified for [her] job; (3) [she] suffered an adverse employment action at the hands of [her] employer, and (4) there is some evidence of a causal connection between [her] membership in a protected class and the adverse employment action." Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016) (internal quotation marks omitted). A preponderance of the evidence is sufficient evidence for "the trier of fact to believe that the existence of a fact is more probable than its nonexistence." Id. (internal quotation marks omitted).

In this case, it is undisputed that Stringer as a female is a member of a protected class and that she suffered an adverse employment action when her employment was terminated by Home Depot. Therefore, she bears the burden of showing that she was qualified for her job and that there was a causal connection between her termination and her sex.

### i. Qualified for Her Job

To meet the requirement of showing that she was qualified for her job, a plaintiff must provide evidence to show that she was performing her job satisfactorily. Burns, 829 F.3d at 9, n.8; Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 139 (1st Cir. 2012). Home Depot contends that Stringer was not qualified for her job as an ASM based on her negative performance

reviews that demonstrate she was not meeting the requirements for that job.  Stringer asserts that she was an exemplary employee.

In support of her assessment, Stringer provides a copy of the cover of the Home Depot magazine, "Orange", issued for the fall of 2011.  She is shown on the cover, standing outside with five other Boston area Home Depot employees, wearing a Home Depot apron and tossing leaves.  She did not provide an article or any other commentary from the magazine to show that she was pictured because she was an exemplary employee.  Standing alone, the magazine photograph does not provide evidence or even an inference that Stringer was qualified for her job.

Stringer also cites generally to the allegations in her EEOC charge.  She made a conclusory statement that her "performance was good."  However, she has provided no facts in the charge or other evidence to support her personal view.

Stringer did not address the substance of her disciplinary notices or her negative performance reviews.  She provides no evidence to show that the reviews were wrong.  In contrast, Home Depot submitted declarations from Houle, Cianci, and Tavano that document Stringer's performance deficits.  As a result, Stringer has not shown that she was qualified for her job.

ii.  Causal Connection

To meet the fourth element of a prima facie case, a plaintiff must show "some evidence of a causal connection between her membership in a protected class and the adverse employment action." Bhatti v. Trs. of Boston Univ., 659 F.3d 64, 70 (1st Cir. 2011).  When a plaintiff's employment has been terminated, the causal connection might be satisfied by evidence that the position was filled by someone with the same or similar qualifications as the plaintiff but who was not a member of the protected class.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  Home Depot contends that Stringer lacks any evidence that her employment was terminated because she is female.

Stringer alleges that Tavano terminated her employment because of her sex.  The record shows, however, that Tavano only recommended that Stringer's employment be terminated but did not make that decision himself.  Instead, Tavano's recommendation was reviewed by Home Depot's Associate Advice and Counsel Group, at the headquarters in Atlanta, who concurred with his recommendation.  Frances Cianci then prepared an investigation review summary for Heather Houle and Lisa Churas, and all three women agreed with the recommendation of termination.[11]  Based on

---

[11] As such, the decision to terminate Stringer's employment was made collectively by the Group and the managers and human resource director, who are all women.  Stringer does not provide

that decision, Tavano notified Stringer of her termination.
After Stringer was terminated, Tavano hired Reydel Veenstra, a
female Home Depot employee, to replace her.

Heather Houle worked with Tavano and with the operation
ASMs, including Stringer.[12]  Houle later became district manager,
which was her position when the issues arose concerning
Stringer's job performance.  In her work with Tavano, Houle found
that he "drove all of his team equally – that is regardless of
gender."  She also found that he had been "consistent in his
treatment toward both the men and women who report to him."
Houle noted that Tavano's reviews with male ASMs, which she
attended, were conducted in exactly the same manner as the review
with Stringer.

Frances Cinanci was also present during Tavano's annual
performance review in March of 2012 and met with Stringer after
the review when Stringer complained that Tavano was being tough

---

evidence or even suggest that any of the decision makers had an
improper motive in terminating her.  See Ameen v. Amphenol
Printed Circuits, 777 F.3d 63, 74 (1st Cir. 2015) (Kayatta, J.
concurring).  Further, Stringer does not allege or provide any
evidence of a "cat's paw" theory, that the termination decision
was based on manipulated information.  See id. at 70.  Indeed,
Houle and Cianci had direct first-hand knowledge of Stringer's
performance problems and disciplinary reports.


[12] Houle noted that she was not surprised that Stringer's
performance was not satisfactory because in her prior dealings
with Stringer she had found that Stringer did the least amount of
work necessary despite direction to improve.

on her.  Cianci and Houle encouraged her to work on the areas of improvement Tavano had identified.

As such, the record includes no credible evidence that Stringer was terminated because she is female.  Stringer has not shown that she was qualified for her job or that there was a causal connection between her protected class, female, and her termination.

### b.  Legitimate Non-Discriminatory Reason

Home Depot also asserts that its legitimate non-discriminatory reason for terminating Stringer's employment was her poor job performance.  Even if Stringer had made a prima facie case of discrimination, the record evidence of her poor job performance would satisfy Home Depot's burden.  Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008).

### c.  Pretext

Stringer makes no argument that Home Depot's reason for terminating her employment was a pretext for discriminating against her because she is female.  The record does not support a theory of pretext.

### B.  Hostile Work Environment

Stringer's discrimination claim in Count I was primarily based on her termination.  See Complaint, doc. no. 1-2, ¶ 31;

Proposed Discovery Plan, doc. no. 13, ¶ III.  At the hearing,
however, Stringer asserted that she intended to also bring a
hostile work environment claim.  Home Depot contends that it is
entitled to summary judgment because Stringer has no evidence to
support the claim.  Specifically, Home Depot contends that
Stringer lacks evidence that Tavano treated her differently
because of her sex and that his treatment rose to the level of a
hostile work environment.

     To prove a hostile work environment claim "a plaintiff must
show harassment sufficiently severe or pervasive so as to alter
the conditions of her employment and create an abusive work
environment" and must show that the harassment "stem[med] from an
impermissible motivation," such as sex.  Maldonado-Catala v.
Municipality of Naranjito, 876 F.3d 1, 10 (1st Cir. 2017)
(internal quotation marks omitted).  The harassment must be "both
objectively and subjectively offensive." Ponte v. Steelcase
Inc., 741 F.3d 310, 320 (1st Cir. 2014).  Importantly, Title VII
does not provide a "general civility code" for the workplace and
instead prohibits conduct that subjects members of one sex "to
disadvantageous terms or conditions of employment to which
members of the other sex are not exposed." Oncale v. Sundowner
Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (internal quotation
marks omitted).

To rise to the level of a hostile work environment, a plaintiff "must show that [her] workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Perez v. Horizon Lines, Inc., 804 F.3d 1, 6 (1st Cir. 2015) (internal quotation marks omitted); see also Oncale, 523 U.S. at 81. The court considers all of the circumstances in the work environment to evaluate the severity or the pervasiveness of the harassment, "including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." Rosario v. Dep't of Army, 607 F.3d 241, 247 (1st Cir. 2010). For example, evidence that a supervisor carried a baseball bat in every interaction with a female employee to intimidate her, and which did intimidate her, raised a triable issue as to whether the harassment was severe or pervasive. Burns v. Johnson, 829 F.3d 1, 9 (1st Cir. 2016). The hostile use of sexually offensive and degrading language, including slurs and humiliating sexual remarks, can be enough to support a hostile work environment claim. Franchina v. City of Providence, 881 F.3d 32, 54-55 (1st Cir. 2018).

In contrast, "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" so as to create a hostile work environment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Generalized taunting, mocking, rude actions, and other insensitive or belittling actions by supervisors are often not sufficiently severe or pervasive to support a hostile work environment claim. See Sepulveda-Vargas v. Caribbean Rests., --- F.3d ---, 2018 WL 2000012, at *3-*4 (1st Cir. Apr. 30, 2018) (supervisor calling plaintiff "cry baby," reprimanding him for going behind supervisor's back, accusing him of taking unnecessary medication, changing his schedule, forcing him to pull down his pants to prove a skin condition, and treating him differently than other managers, along with other rude or insensitive actions, were not materially adverse or sufficient to cause a hostile environment); Maldonado-Catala v. Municipality of Naranjito, 876 F.3d 1, 11 (1st Cir. 2017) (defendants' failure to investigate threatening Facebook postings, coercion to return to work too soon after a workplace injury with a threat of being assigned janitorial duties, and unequal treatment in work assignments did not create a hostile work environment); Alvarado v. Donahoe, 687 F.3d 453, 461-62 (1st Cir. 2012) (supervisors taunting an employee whom they knew had a

psychiatric condition by calling him crazy, belittling him
because of his condition, and threatening to fire him did not
create a hostile work environment); Colon-Fontanez v.
Municipality of San Juan, 660 F.3d 17, 44 (1st Cir. 2011)
(supervisor who would not meet with a plaintiff employee although
he was required to do so, avoided her, yelled at her in front of
other employees, would not let her participate in a workshop that
other employees attended, scrutinized her work and her movements
around the office, and did not support her against comments by
co-workers, among other things, did not create a hostile work
environment).

Here, there were no physical threats or intimidation.[13]
Stringer contends that Tavano demeaned her by yelling at her in
front of other employees and customers, did not assist or support
her, gave her the silent treatment, unfairly disciplined her, and
found fault with her conduct. She contends that Tavano's actions
aggravated her asthma. Stringer attributes Tavano's treatment to
sex discrimination because she believes that male employees were
not disciplined for similar problems. Stringer also states that
Tavano was disrespectful toward Heather Houle, the district

_____

[13]Stringer does not allege that Tavano engaged in sexually
explicit language or behavior. C.f., e.g., Morrison v. Carleton
Wollen Mills, Inc., 108 F.3d 429, 438 (1st Cir. 1997).

manager, and laughed that Houle did not expect him to hire another female manager, which he in fact did in November of 2012.

The record shows that Tavano was a tough boss.  Stringer's version of events, however, does not demonstrate the kind of severe or pervasive treatment that could arguably support a hostile work environment claim.  Although Tavano may have been rude, unpleasant, and unfriendly, neither Title VII nor RSA Chapter 354-A requires managers to be friendly or even civil to their employees.

In addition, even if Stringer could show that she was subjected to a hostile work environment, she must also provide evidence that the actions were due to her sex.  A plaintiff's "unsubstantiated assertions that the actions had to be the product of discriminatory animus . . . is insufficient to create a material issue of fact or merit trial."  Garmon v. Nat'l RR Passenger Corp., 844 F.3d 307, 318 (1st Cir. 2016).

At the hearing, counsel for Home Depot pointed out that Stringer testified at her deposition that Tavano hated her, that she did not know why, and that she did not attribute it to her sex.  In response, Stringer acknowledged her deposition testimony and said, "yes, I do not know why he did not like me but there was an underlying reason."  The only evidence Stringer provides that she was treated differently, and worse, than her male

counterparts are her own perceptions that Tavano was friendlier to her male counterparts and her unsubstantiated belief that male managers were not disciplined for incidents that warranted discipline.

In contrast to Stringer's subjective view, Heather Houle stated in her declaration that she sat in on Stringer's performance review and on performance reviews of male ASMs and found that Tavano treated them exactly the same, which was candidly. Houle found that Stringer did not like being confronted with a candid review of her performance. Further, the record documents that at least one other employee, apparently a male employee, complained to Home Depot headquarters about Tavano's conduct, yelling and swearing at a meeting. Therefore, the circumstances do not support any connection between Tavano's conduct and Stringer's sex.

As previously noted, Stringer also claims that Tavano did not conduct a mid-year review with her while he did mid-year reviews with the male ASMs and did not communicate with her to help her perform better. During her deposition, however, Stringer admitted that Tavano did a mid-year review with her on September 4, 2012, and that Heather Houle also attended the meeting. Houle confirmed that both she and Tavano had numerous conversations with Stringer about her performance.

Stringer has not provided evidence to raise a triable issue as to whether the treatment she received was severe, pervasive, or because of her sex.

C.   Summary

In the absence of direct evidence of discrimination and without support for a prima facie case based on circumstantial evidence, Stringer cannot prove her sex discrimination termination claim.  Even if Stringer had made a prima facie case, Home Depot has provided a legitimate and non-discriminatory reason for terminating her, and Stringer has not shown a triable issue as to whether her poor work performance was a pretext for sex discrimination.  Stringer also has not shown a triable issue to support a hostile work environment claim.  As a result, Home Depot is entitled to summary judgment on Count I.

III.  Count II – Retaliation

Stringer alleges in her complaint that she complained about "Tavano's illegal disparate treatment in April 2012 and December 2012."  She also alleges that she raised her fear of retaliation at those meetings and again when she was contacted by Trent Henning about another employee's complaint.  She alleges that she was terminated in retaliation for her complaints.

Home Depot moves for summary judgment on the retaliation claim on the ground that Stringer lacks evidence to prove any of

the elements of retaliation.  Stringer did not address her retaliation claim in her objection to summary judgment, and her response at the hearing did not provide support for the claim.

"Title VII makes it unlawful for employers to retaliate against persons who complain about unlawfully discriminatory employment practices." Ahern v. Shinseki, 629 F.3d 49, 55 (1st Cir. 2010).  Retaliation claims also proceed under the McDonnell Douglas framework. Cherkaoui, 877 F.3d at 28.  "To establish a prima facie case of retaliation, Plaintiff must show that (1) she undertook protected conduct; (2) she suffered an adverse employment action, and (3) the two were causally linked." Id. (internal quotation marks omitted).  If the plaintiff makes a prima facie case of retaliation, the defendant must articulate a legitimate and non-discriminatory reason for the challenged employment action. Id.  The plaintiff must then show that the defendant's reason is a pretext for retaliation. Id.

Home Depot contends that Stringer cannot prove her retaliation claim because she did not engage in protected conduct.  "An employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under Title VII." Fantini v. Salem St. College, 557 F.3d 22, 32 (1st Cir. 2009).

Stringer complained to Cianci and Houle about Tavano's treatment of her and said that he was being tough on her and later said that he was unfair. Her complaints about Tavano's actions did not raise an issue of disparate treatment based on sex or any other unlawful discrimination.[14] As such, the complaints were not protected conduct.

In addition, even if the complaints were protected conduct, there must be a causal connection between the complaints and the decision to terminate employment. Alvarado, 687 F.3d at 459. For that reason, "to successfully establish a claim of unlawful retaliation there must be, at a minimum, competent evidence that the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged." Id. (internal quotation marks omitted).

Neither Houle nor Cianci told Tavano that Stringer had made complaints about him, and Stringer provides no evidence that she was terminated because of her complaints to Cianci and Houle.

---

[14] Stringer did not participate in the investigation of someone else's complaint about Tavano, which was done by Trent Higgins from Home Depot's corporate office. She provides no evidence that her response to that investigation was the reason for her termination.

Stringer filed her EEOC charge in April of 2013, after she was terminated. Because of the timing, she could not have been terminated in retaliation for her EEOC charge. Therefore, Stringer has not provided evidence to show that she was terminated in retaliation for protected conduct.

Home Depot is entitled to summary judgment on Count II.

IV. Wrongful Termination

Home Depot moves for summary judgment on Stringer's state law wrongful termination claim on the ground that the common law remedy has been preempted by the statutory remedy provided by RSA 354-A. See Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 429 (1st Cir. 1996); but see Faulkner v. Mary Hitchcock Mem. Hosp., 2013 WL 6019318, at *1 (D.N.H. Nov. 13, 2013). Alternatively, Home Depot contends that Stringer cannot show that she was wrongfully terminated. Stringer did not address her wrongful termination claim in her objection to summary judgment. She was unable to articulate any theory to support the claim at the hearing.

In Count III, which is titled "Wrongful Termination," Stringer alleges that Home Depot breached the duty of good faith and fair dealing in employment by terminating her when they knew that she had made complaints about Tavano. She further alleges that Home Depot failed to investigate her complaints of sex

discrimination.  She contends that Tavano "had his own agenda and that was to keep women off management unless they were hand picked by Tavano."  Stringer also alleges that Tavano was motivated to terminate her employment to retaliate against her for complaining about him.[15]

To prove a claim of wrongful termination, "the plaintiff must show first that the defendant was motivated by bad faith, malice, or retaliation in terminating the plaintiff's employment."  Porter v. City of Manchester, 151 N.H. 30, 38 (2004) (internal quotation marks).  If that showing is made, "the plaintiff must demonstrate that he was discharged because he performed an act that public policy would encourage, or refused to do something that public policy would condemn."  Id.

For the reasons discussed above, Stringer lacks evidence that Home Depot was motivated by bad faith, malice, or retaliation.  Instead, the record shows that she was terminated for poor job performance.  She also does not argue and lacks evidence that she was discharged for doing something that public policy would encourage or for refusing to do something that public policy would condemn.

---

[15] As is noted above, Tavano recommended Stringer's termination but did not make that ultimate decision.  He also did not know that she had complained about him.

As a result, Home Depot is entitled to summary judgment on Count III.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 41) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

May 3, 2018

cc:  M. Amy Carlin, Esq.
     Jeffrey S. Siegel, Esq.
     Barbara J. Stringer, pro se